# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| STARR INDEMNITY & LIABILITY COMPANY, a/s/o CESSNA AIRCRAFT COMPANY, | )<br>)<br>) |
| Plaintiff, | )  Case No. 15-cv-6902<br>)<br>)  Judge Robert M. Dow, Jr. |
| v. | ) |
| YRC, INC., | )<br>) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Starr Indemnity & Liability Company, as subrogee of Cessna Aircraft Company, brought suit against Defendant YRC, Inc. for cargo damage. Plaintiff alleges that as a result of Defendant's damage to the cargo, Plaintiff was compelled to pay its insured, Cessna Aircraft Company, the sum of $1,916,413.26. Before the Court are Defendant YRC Inc.'s motion [22] to dismiss Counts II, III, and IV pursuant to Federal Rule of Civil Procedure 12(b)(6), and Plaintiff's motion [27] to permit and schedule oral argument on Defendant's motion to dismiss. For the reasons set forth below, the Court denies Defendant's motion to dismiss [22] and denies Plaintiff's motion for oral argument [27]. This case is set for further status hearing on February 2, 2017 at 9:00 a.m.

## I.  Background

Plaintiff Starr Indemnity is the insurance provider for Cessna Aircraft Company, a company that manufactures, sells, and leases business jets. [15 (Complaint) at ¶¶ 1–2.] Defendant YRC is an interstate motor carrier. [*Id.* at ¶ 4.] Plaintiff alleges that on or about August 13, 2014, Cessna tendered two jet engines ("the cargo") to Defendant for transportation

from Orlando, Florida to Bridgeport, West Virginia. [*Id.* at Count I ¶ 6.] Defendant issued a bill of lading to Cessna acknowledging receipt of the cargo for transport. [*Id.*] Plaintiff contends that on or about August 14, 2014, the cargo was extensively damaged during transportation by Defendant. [*Id.* at Count I ¶ 7.] Plaintiff further contends that as a result of the damage to the cargo, Plaintiff was compelled to pay its insured, Cessna, the sum of $1,916,413.26. [*Id.* at Count I ¶ 9.]

Plaintiff contends that Defendant operates pursuant to authority issued to it by the Federal Motor Carrier Safety Administration ("FMCSA") and provides transportation service subject to jurisdiction under Subchapter I of Chapter 135 of the Interstate Commerce Commission Termination Act ("ICCTA") pursuant to 49 U.S.C. §§ 13501 *et seq.* and is subject to the requirements of the Federal Motor Carrier Safety Regulations ("FMCSR"). [*Id.* at Count II ¶ 3.] Plaintiff's amended complaint alleges liability under the Carmack Amendment to the Interstate Commerce Act, 49 U.S.C. § 14706, (Count I), as well as violations of the ICCTA, 49 U.S.C. § 14704(a)(2) and 14704(e), (Counts II, III, and IV).

In Count I, Plaintiff alleges that under the Carmack Amendment, Defendant is liable for $1,916,413.26 in cargo damage plus pre-judgment and post-judgment interest. Plaintiff asserts that there is in excess of $10,000 at issue per the bill of lading, exclusive of interest and costs. [*Id.* at ¶ 5.]

In Count II, Plaintiff alleges that Defendant permitted the trailer transporting the cargo "to be driven when it was so loaded, or so improperly distributed or so inadequately secured as to prevent its safe operation," in violation of the safe loading requirements of 49 C.F.R. § 398.4(g)(1).[1] [See *id.* at Count II ¶ 20.] According to Plaintiff, the trailer contained Cessna's

---

[1] 49 C.F.R. § 398.4 – Driving of motor vehicles, states:

cargo and other commodities being shipped by unrelated entities. [*Id.* at Count II ¶ 9.] Plaintiff contends that Defendant was responsible for blocking and bracing the various commodities inside the trailer and for installing sealed dividers between Cessna's cargo and the other commodities, which Plaintiff alleges was intended to help prevent shifting of cargo. [*Id.* at Count II ¶¶ 10–12.] Plaintiff alleges that on or about August 14, 2014, the cargo was damaged as a result of a crash involving a roll-over of the trailer in Ohio. [*Id.* at Count II ¶ 14.] Plaintiff contends that the driver, an employee of Defendant, gave a witness statement to the Ohio Police stating that he was "[d]riving from 77 N to 21 South doing 30 m.p.h. Load shifted & set rolled over (Double Trailers)." [*Id.* at Count II ¶¶ 15, 17.] According to Plaintiff, when the police asked the driver what caused him to go off the road, the driver stated that "[t]he load shifted." [*Id.* at Count II ¶ 18.] Plaintiff contends that assuming, arguendo, that the driver responded truthfully in his witness statement, Defendant violated the safe loading requirements of 49 C.F.R. § 398.4(g)(1), and thus violated Subchapter I, Chapter 135 of ICCTA. Plaintiff asserts that Defendant is therefore liable for $1,916,413.26 in cargo damage plus pre-judgment and post-judgment interest and attorney's fees, pursuant to 49 U.S.C. § 14704(a)(2) and (e).[2] [See *id.* at Count II ¶¶ 20–21.]

---

> (g) Safe loading
>> (1) Distribution and securing of load. No motor vehicle shall be driven nor shall any motor carrier permit or require any motor vehicle to be driven if it is so loaded, or if the load thereon is so improperly distributed or so inadequately secured, as to prevent its safe operation.

Plaintiff incorrectly cites to 49 C.F.R. § 392.14(g) for this language in its amended complaint [18] but correctly cites 49 C.F.R. § 398.4(g)(1) in its response brief [25].

[2] 49 U.S.C. § 14704 – Rights and remedies of persons injured by carriers or brokers, states in relevant part:

> (a)(2) Damages for Violations. A carrier or broker providing transportation or service subject to a jurisdiction under chapter 135 is liable for damages sustained by a person as a result of an act or omission of that carrier or broker in violation of this part.

3

In Count III, Plaintiff alleges, upon information and belief, that the driver made false statements to the police in his witness statement. [*Id.* at Count III ¶ 19.] Plaintiff contends that the driver falsely stated that he was traveling at 30 m.p.h. when he was actually "traveling in excess of two times the posted speed limit of 30 m.p.h." [*Id.* at Count III ¶ 20.] Plaintiff further contends that the vehicle left the road not because the load shifted, but "solely as a result of [the driver's] flagrant violation of the posted speed limit." [*Id.* at Count III ¶ 21.] Plaintiff asserts that under 49 C.F.R. § 390.11[3] of the FMCSR, motor carriers such as Defendant are directed to require that their drivers observe and comply with the duties set forth in the FMCSR, specifically with 49 C.F.R. § 392.6,[4] which prohibits motor carriers from permitting operation of any commercial motor vehicle in excess of the speed limit. [*Id.* at Count III ¶ 21.] Plaintiff alleges that by failing to require the driver to adhere to the requirements of the FMSCR, including 49 C.F.R. §§ 390.11 and 392.6, Defendant violated Subchapter I, Chapter 135 of ICCTA and is therefore liable for $1,916,413.26 in cargo damage plus pre-judgment and post-judgment interest and attorney's fees, pursuant to 49 U.S.C. § 14704(a)(2) and (e). [See *id.* at Count III ¶¶ 28, 32.]

---

\* \* \*
(e) Attorney's Fees. The district court shall award a reasonable attorney's fee under this section. The district court shall tax and collect that fee as part of the costs of the action.

[3] 49 C.F.R. § 390.11 – Motor carrier to require observance of driver regulations, states in relevant part:

Whenever in part 325 of subchapter A or in this subchapter a duty is prescribed for a driver or a prohibition is imposed upon the driver, it shall be the duty of the motor carrier to require observance of such duty or prohibition.

[4] 49 C.F.R. § 392.6 – Schedules to conform with speed limits, states:

No motor carrier shall schedule nor permit nor require the operation of any commercial motor vehicle between points in such period of time as would necessitate the commercial motor vehicle being operated at speeds greater than those prescribed by the jurisdiction in or through which the commercial motor vehicle is being operated.

Finally, in Count IV, Plaintiff alleges that the driver has a record of criminal convictions in Ohio for speeding and other moving violations. [*Id.* at Count IV ¶ 26.] Plaintiff contends that Defendant knew or should have known about the driver's prior convictions for speeding and driving while under the influence of alcohol or drugs and that Defendant failed to give sufficient, if any, weight to these violations. [*Id.* at Count IV ¶ 26.] Plaintiff further alleges that Defendant's failure to properly observe the driver's past driving records and to prevent him from operating as a commercial driver constitutes a violation of the ICCTA and the FMCSR, citing 49 C.F.R. §§ 391.25,[5] 391.51,[6] and 392.6. Plaintiff contends that Defendant is liable for $1,916,413.26 in cargo damage plus pre-judgment and post-judgment interest and attorney's fees, pursuant to 49 U.S.C. § 14704(a)(2) and (e). [See *id.* at Count IV ¶¶ 27–28, 32.]

Defendant has moved to dismiss Counts II, III, and IV pursuant to Federal Rule of Civil Procedure 12(b)(6).

---

[5] 49 C.F.R. § 391.25 – Annual inquiry and review of driving record, states in relevant part:

> (b) Except as provided in subpart G of this part, each motor carrier shall, at least once every 12 months, review the motor vehicle record of each driver it employs to determine whether that driver meets minimum requirements for safe driving or is disqualified to drive a commercial motor vehicle pursuant to § 391.15.
>
> > (1) The motor carrier must consider any evidence that the driver has violated any applicable Federal Motor Carrier Safety Regulations in this subchapter or Hazardous Materials Regulations (49 CFR chapter I, subchapter C).
> >
> > (2) The motor carrier must consider the driver's accident record and any evidence that the driver has violated laws governing the operation of motor vehicles, and must give great weight to violations, such as speeding, reckless driving, and operating while under the influence of alcohol or drugs, that indicate that the driver has exhibited a disregard for the safety of the public.

[6] 49 C.F.R. § 391.51 – General requirements for driver qualification files, states in relevant part:

> (a) Each motor carrier shall maintain a driver qualification file for each driver it employs. A driver's qualification file may be combined with his/her personnel file.
>
> (b) The qualification file for a driver must include * * *

## II. Legal Standard

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, the complaint first must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), such that the defendant is given "fair notice of what the * * * claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)) (alteration in original). Second, the factual allegations in the complaint must be sufficient to raise the possibility of relief above the "speculative level." *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). However, "[s]pecific facts are not necessary; the statement need only give the defendant fair notice of what the * * * claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citing *Twombly*, 550 U.S. at 555) (alteration in original). Dismissal for failure to state a claim under Rule 12(b)(6) is proper "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly,* 550 U.S. at 558. In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court accepts as true all of Plaintiff's well-pleaded factual allegations and draws all reasonable inferences in Plaintiff's favor. *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007).

## III. Analysis

Defendant argues that the Court should dismiss Counts II, II, and IV, which are based on violations of the ICCTA, §§ 14704(a)(2) and (e), because the Carmack Amendment provides the

sole and exclusive remedy for damage to cargo transported in interstate commerce. As an initial matter, the Court will discuss the background of the Carmack Amendment and the ICCTA to set the stage for the analysis of this motion to dismiss.

The Interstate Commerce Act contains several provisions governing a motor carrier's liability to a shipper for the loss of, or damage to, an interstate shipment of goods. *N. Am. Van Lines, Inc. v. Pinkerton Sec. Sys., Inc.*, 89 F.3d 452, 453 (7th Cir. 1996). These provisions are commonly referred to collectively as the Carmack Amendment. The Carmack Amendment provides shippers with the statutory right to recover for actual losses or injuries to their property caused by carriers involved in the shipment.[7] *Gordon v. United Van Lines, Inc.*, 130 F.3d 282, 285–86 (7th Cir. 1997). The Carmack Amendment limits the carrier's liability to the "actual loss or injury to the property" damaged en route.[8] *REI Transport, Inc. v. C.H. Robinson Worldwide, Inc.* 519 F.3d 693, 697 (7th Cir. 2008) (citing 49 U.S.C. § 14706(a)(1)).

Prior to the enactment of the Carmack Amendment, disparate schemes of carrier liability existed among the states, some of which allowed carriers to limit or disclaim liability, whereas

---

[7] The Carmack Amendment states, in relevant part:

> A carrier providing transportation or service subject to the jurisdiction under subchapter I or III of chapter 135 shall issue a receipt or bill of lading for property it receives for transportation under this part. That carrier and any other carrier that delivers the property and is providing transportation or service subject to jurisdiction under subchapter I or III of chapter 135 or chapter 105 are liable to the person entitled to recover under the receipt or bill of lading. The liability imposed under this paragraph is for the actual loss or injury to the property caused by (A) the receiving carrier, (B) the delivering carrier, or (C) another carrier over whose line or route the property is transported in the United States[.]

49 U.S.C. § 14706(a)(1).

[8] The prima facie case under the Carmack Amendment is straightforward: a plaintiff must show "(1) delivery in good condition; (2) arriving in damaged condition; and (3) the amount of damages." *REI Transport, Inc. v. C.H. Robinson Worldwide, Inc.* 519 F.3d 693, 699 (7th Cir. 2008) (citation and internal quotation marks omitted). If the plaintiff establishes the prima facie case, the burden shifts to the defendant "to show that it was free from negligence and that the damage to the cargo was due to one of the excepted causes relieving the carrier of liability." *Id.* (citation and internal quotation marks omitted).

others permitted full recovery. *REI Transport*, 519 F.3d at 697. Thus, a carrier could have been "held liable in one court when under the same state of facts he would be exempt from liability in another." *Adams Express Co. v. Croninger*, 226 U.S. 491, 505 (1913). This patchwork of regulation made it "practically impossible for a shipper engaged in a business that extended beyond the confines of his own state * * * to know * * * what would be the carrier's actual responsibility as to goods delivered to it for transportation from one state to another." *Id.* To solve this problem, the Carmack Amendment "create[e] a national uniform rule of carrier liability concerning interstate shipments." *Pinkerton*, 89 F.3d at 455.

The Interstate Commerce Commission Termination Act of 1995, Pub.L. 104–88, 109 Stat. 803, amended and recodified the provision of the Carmack Amendment governing motor carrier liability relevant to this case at 49 U.S.C. § 14706. The ICCTA transferred the motor carrier regulatory function of the Interstate Commerce Commission to the Department of Transportation and the Surface Transportation Board. *Owner-Operator Indep. Drivers Ass'n, Inc. v. New Prime, Inc.*, 192 F.3d 778, 780 (8th Cir. 1999) (citing 49 U.S.C. § 13501). However, Congress did not transfer all of the responsibilities of the ICC to the DOT. ICCTA allows commercial disputes, which had been administratively adjudicated by the ICC, to be brought in federal court. *Courtney v. Ivanov*, 41 F.Supp.3d 453, 459 (W.D. Penn. 2014) (citing § 14704). Section 14704(a)(2), which Plaintiff relies on in this case, provides that "a carrier * * * is liable for damages sustained by a person as a result of an act or omission of that carrier * * * in violation of this part." 49 U.S.C. § 14704(a)(2).[9] At least some federal courts have held that § 14704(a)(2) authorizes private parties to sue for damages for carrier conduct "in violation

---

[9] 49 U.S.C. § 14704(a)(2) states:

> (a)(2) Damages for violations. A carrier or broker providing transportation or service subject to a jurisdiction under chapter 135 is liable for damages sustained by a person as a result of an act or omission of that carrier or broker in violation of this part.

[regulations promulgated under] this part." *New Prime*, 192 F.3d at 785; see also *Fulfillment Servs. Inc. v. United Parcel Serv., Inc.*, 528 F.3d 614, 621 (9th Cir. 2008) ("[T]he plain language of § 14704(a)(2) counsels that there is a private right of action for violations within that part of the Termination Act[.]"); *Owner-Operator Indep. Drivers Ass'n, Inc. v. Mayflower Transit, LLC*, 161 F.Supp.2d 948, 955 (S.D. Ind. 2001), affirmed in part by 615 F.3d 790, 792 (7th Cir. 2010) ("Section 14704 expressly provides for damages * * * to 'a person' injured by a carrier's act or omission."); *Tillman v. Bulkmatic Transp. Co.*, 2006 WL 1793562, at *1 (N.D. Ill. June 27, 2006); *Owner-Operator Indep. Drivers Ass'n, Inc. v. Bulkmatic Transport Co.*, 2004 WL 1151555, at *2 (N.D. Ill. May 3, 2004). Defendant also invokes § 14704(e), which provides for an award of reasonable attorney's fees.[10]

With this background in mind, the Court now turns to the merits of Defendant's motion to dismiss. Defendant argues that the Court should dismiss Counts II, II, and IV of the amended complaint, which are based on violations of the ICCTA §§ 14704(a)(2) and (e), because the Carmack Amendment provides the sole and exclusive remedy for damage to cargo transported in interstate commerce. Defendant is correct that the Carmack Amendment has some preemptive force. The Carmack Amendment ensures the national uniformity of its scheme of liability by preempting "state and common law remedies inconsistent with [the Amendment]." *REI Transport*, 519 F.3d at 698 (citation and internal quotation marks omitted).

However, although the Carmack Amendment's preemptive scope is broad, it is not all-inclusive. *Schartz v. National Van Lines, Inc.*, F.Supp.2d 690, 697 (N.D. Ill. 2005). To support its argument that the claims under § 14704 should be dismissed, Defendant relies on cases

---

[10] 49 U.S.C. § 14704(e) states:

> (e) Attorney's fees. The district court shall award a reasonable attorney's fee under this section. The district court shall tax and collect that fee as part of the costs of the action.

describing the Carmack Amendment as "the exclusive remedy" for damage to cargo transported in interstate commerce, but these cases merely state that the Carmack Amendment preempts state law and common law, not other federal statutes. See *Pinkerton*, 89 F.3d at 453 (noting that the Carmack Act preempts "all state and common law remedies covering this subject"); *Hughes Aircraft Co. v. N. Am. Van Lines, Inc.*, 970 F.2d 609, 613 (9th Cir. 1992) (noting that the Carmack Amendment preempts state common law); *Fulton v. Chicago, Rock Island & P. R. Co.*, 481 F.2d 326, 332 (8th Cir. 1973) (holding that the Carmack Amendment preempted plaintiff's negligence claim); *Certain Underwriters at Interest at Lloyds of London v. United Parcel Serv. of Am., Inc.*, 762 F.3d 332, 333 (3d Cir. 2014) (holding that "the Carmack Amendment preempts all state law claims for compensation for the loss of or damage to goods shipped by a ground carrier in interstate commerce"). Defendant cites no case law supporting its argument that the Carmack Amendment preempts another federal statute, namely § 14704(a)(2).[11]

Plaintiff's claims under § 14704 are not based on state law or common law and thus are not preempted by the Carmack Amendment. Therefore, without expressing an opinion on the merits of Plaintiff's claims under §14704(a)(2) and (e), the Court denies Defendant's motion to dismiss Counts II, III, and IV of the amended complaint.[12] Cf. *Hall v. Aloha Int'l Moving Servs., Inc.*, 2002 WL 1835469, at *15 (D. Minn. Aug. 6, 2002) (granting summary judgement for plaintiff on Carmack Amendment claim for damaged goods, and granting summary judgment for

---

[11] Defendant argues in its reply brief that it "does not claim the preemption doctrine * * * bars [Plaintiff's] § 14704(a)(2) claims. Rather, [Defendant] contends that the preemptive sweep of the Carmack Amendment * * * provides further evidence in support of its position that Congress intended the Carmack Amendment exclusively govern claims for damages to cargo shipped in interstate transit. [26, at 6.] Semantics aside, Defendant's exclusivity argument is in substance a preemption argument: essentially, Defendant claims that the Carmack Amendment preempts the entire field of interstate cargo transport, wiping out both state and federal law in the area.

[12] Defendant does not challenge whether § 14704 provides a private right of action for the violations of the federal regulations that Plaintiff alleges in this case, so the Court does not address this issue.

defendants on § 14704 claim for violation of tariff and registration provisions, not because of Carmack preemption, but because damages sustained were not the result of the alleged failure to register or maintain applicable tariffs).

Finally, Plaintiff has filed a motion [27] to permit and schedule oral argument on this issue. However, the Court finds that the parties' briefs have amply apprised the court of the relevant issues supporting and opposing Defendant's pending motion to dismiss [22]. Oral argument is therefore unnecessary. Plaintiff's motion for oral argument [27] is denied.

## IV. Conclusion

For the foregoing reasons, the Court denies Defendant's motion to dismiss [22] and denies Plaintiff's motion for oral argument [27]. This case is set for further status hearing on February 2, 2017 at 9:00 a.m.

Date: January 17, 2017

Robert M. Dow, Jr.
United States District Judge